UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALAN WEBERMAN,<br><br>               Plaintiff,<br><br>           v.<br><br>CENTRAL INTELLIGENCE AGENCY,<br><br>               Defendant. | No. 15 Civ. 2789 (WHP) |

# DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF
# MOTION FOR SUMMARY JUDGMENT

PREET BHARARA
United States Attorney for the
Southern District of New York
*Counsel for Defendant*
86 Chambers Street, Third Floor
New York, New York 10007
Telephone: (212) 637-2697
peter.aronoff@usdoj.gov

*Of Counsel:*

PETER ARONOFF
Assistant United States Attorney

## CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ..................................................................................................................................... 1

I.  Plaintiff's Arguments About Automatic Declassification Are Irrelevant to the Agency's Proper Invocation of Exemption 1 to Ground Its Glomar Response ......................... 1

II. The Agency's Glomar Response Is Also Fully Justified by Exemption 3, Which Does Not Depend on Classification Status ................................................................................. 4

III. Plaintiff's Remaining Arguments Are Without Merit ............................................................... 6

CONCLUSION .................................................................................................................................. 9

**PRELIMINARY STATEMENT**

Defendant the Central Intelligence Agency (the "CIA," the "agency," or the "government"), by its attorney, Preet Bharara, United States Attorney for the Southern District of New York, respectfully submits this reply memorandum of law in support of its motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, as against the claims filed by plaintiff Alan Weberman under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA").

Plaintiff's memorandum of law in opposition ("Pl. Br."), ECF No. 21, makes several fundamental mistakes. Most fundamentally, plaintiff appears to argue that the automatic declassification procedures of Executive Order 13526 prevent the agency from providing a Glomar response in this case. But these procedures are irrelevant to the agency's response, regardless of whether the CIA's Glomar response is grounded in FOIA Exemption 1 or Exemption 3. Plaintiff also makes a number of additional arguments, none of which call the agency's response into question. In sum, the agency's Glomar response should be upheld, and judgment should be entered in the government's favor.

**ARGUMENT**

**I.      Plaintiff's Arguments About Automatic Declassification Are Irrelevant to the Agency's Proper Invocation of Exemption 1 to Ground Its Glomar Response**

As an initial matter, plaintiff's arguments about automatic declassification of documents are simply not relevant because the agency has properly provided a Glomar response.

Plaintiff's FOIA request did not demand documents from a specific period of time; rather, it sought all records on two specific foreign nationals, Fernando Farinha Simões and José António dos Santos Esteves. *See* Wilson Decl. ¶ 6. However, plaintiff has made clear that he is interested in these two individuals because of the role he claims they played in a plane crash in

1

Portugal in 1980. *See, e.g.,* Am. Compl. ¶ 3; *see also* Pl. Br. at 3. Plaintiff therefore argues that "the fact of any records' existence or nonexistence should not be classified as they are over 25 years old[;] in fact they are presumably 35 years old . . . ." Pl. Br. at 4.

Plaintiff's argument fundamentally misapprehends the nature of a Glomar response. The classified fact on which the agency bases[1] its Glomar response is the fact of whether records exist or not. That fact is tethered to the present: when the agency received plaintiff's FOIA request, it made a determination that the fact of whether any responsive records exist is a currently classified fact. *See* Wilson Decl. ¶ 19 ("Therefore, the CIA asserted a Glomar response to Plaintiff's FOIA request because the existence or nonexistence of responsive CIA records is a currently and properly classified fact, the disclosure of which reasonably could be expected to cause damage to the national security.").

Courts have recognized that Glomar responses are essentially different from other types of FOIA responses. Although a Glomar response may depend on a classified fact—the fact of whether records exist—that fact is not embodied in a document. Thus, for example, "the CIA is not required to establish a declassification timeline in order to 'properly classif[y]' a *Glomar* fact under Executive Order 13,526." *Mobley v. C.I.A.*, 924 F. Supp. 2d 24, 50 (D.D.C. 2013), *aff'd,* 806 F.3d 568 (D.C. Cir. 2015).

Plaintiff may also be arguing that *if* there are documents that would otherwise be responsive to the plaintiff's request, *and* those documents are over 25 years old, then those documents should have already been declassified automatically pursuant to Executive Order 13526. But this argument too is mistaken.

---

[1] As explained further in Section II below, the agency has also invoked Exemption 3, which independently justifies its Glomar response. As to this exemption, the agency need not show that any fact is classified.

First, the agency has neither confirmed nor denied the existence of any records. It would therefore be pure speculation to assume that records do exist.

Second, plaintiff misreads the requirements of Executive Order 13526. The Order does not call for all records of a certain age to be released automatically. Rather, the Order expressly states that the periodic automatic declassification of certain documents (which must also have permanent historical value) is "[s]ubject to" the provisions of paragraphs (b) through (d) and (g) through (j) of section 3.3. Paragraph (b), in turn, permits agencies to exempt from automatic declassification for an additional 25 years (or in certain cases, 50 additional years[2]) documents that would present any of a number of enumerated national security dangers. For example, documents are exempt from automatic disclosure at 25 years if they would "reveal the identity of a confidential human source, a human intelligence source, a relationship with an intelligence or security service of a foreign government or international organization, or a nonhuman intelligence source," or "reveal information, including foreign government information, that would cause serious harm to relations between the United States and a foreign government, or to ongoing diplomatic activities of the United States." *Id.* § 3.3(b)(1), (6). Thus, in no way does the Order demand the immediate release of all previously classified documents once the clock strikes 25.

Finally, it is important to note that even in cases where FOIA requests sought information on decades-old events or individuals who were long dead, courts have upheld the agencies' use of a Glomar response. For example, in *Wolf v. C.I.A.*, 473 F.3d 370, 372-73 (D.C. Cir. 2007), the plaintiff, "a historical researcher," sought records on Jorge Eliécer Gaitán, a Colombian presidential candidate assassinated in 1948. The D.C. Circuit found that the CIA had met its burden on summary judgment by explaining, in a public affidavit, how the revelation of

---

[2] These durations are derived from subparagraph 3.3(h) of the Order.

3

whether or not the CIA had interest in a particular foreign national could harm foreign relations. *See id.* at 376. In addition, the court specifically noted that "it is logical to conclude that the need to assure confidentiality to a foreign source includes neither confirming nor denying the existence of records even decades after the death of the foreign national," *id.* at 377, and cited an earlier case, *Fitzgibbon v. C.I.A.*, 911 F.2d 755, 764 (D.C. Cir. 1990), in which the court had noted the "compelling" and ongoing interest in confidentiality of intelligence sources even years after their deaths.[3] As the Wilson Declaration makes clear, the same policy reasons apply equally to this case: by making a Glomar response here, the agency has sought to protect both foreign relations and the confidentiality of human sources. *See* Wilson Decl. ¶¶ 33-34, 27.

In sum, plaintiff's arguments relating to Executive Order 13526's automatic declassification procedures do not bear on the validity of the agency's Glomar response in this case.

## II. The Agency's Glomar Response Is Also Fully Justified by Exemption 3, Which Does Not Depend on Classification Status

As stated in both the government's opening brief, *see* Def. Br. at 9-11, and the Wilson Declaration, *see id.* ¶¶ 35-37, the agency bases its Glomar response not only on Exemption 1 (which exempts from disclosure under FOIA properly classified facts) but also on Exemption 3. The latter exemption carves out from FOIA matters that are "specifically exempted from disclosure by statute," provided that the statute meets certain criteria. *See* 5 U.S.C. § 552(b)(3). Exemption 3 is an entirely separate and sufficient basis supporting the agency's Glomar

---

[3] As another example, in *Larson v. Dep't of State*, 565 F.3d 857, 864 (D.C. Cir. 2009), the D.C. Circuit, in upholding a Glomar response to a request for records relating to violence in Guatemala in the 1970s and 1980s, rejected the plaintiffs' argument that the government should be required to provide answers to questions "such as whether the passage of time or change in political environment have rendered classification less necessary, and how revelation of specific details she requested such as the source's nationality and whether the source is still alive bear on national security."

4

response; thus, the Court need not reach any of plaintiff's arguments attacking the agency's Glomar response on the basis of Exemption 1, including the classification status of any fact.

Here, the agency relies on the National Security Act, an exempting statute, which prohibits the unauthorized disclosure of intelligence sources and methods. *See* 50 U.S.C. § 3024(i)(1). As explained in the Wilson Declaration, the agency has determined that acknowledging the existence or nonexistence of records on specific foreign nationals would endanger intelligence sources and methods. *See* Wilson Decl. ¶ 36 Thus, the agency's Glomar response was justified.

Critically, "Exemption 3 is independent of Exemption 1 and may be invoked independently." *Gardels v. C. I. A.*, 689 F.2d 1100, 1107 (D.C. Cir. 1982) (rejecting plaintiff's argument that Exemption 3 was not properly invoked where district court did not also assess applicability of Exemption 1). Exemption 3 does not require a showing that any fact is classified; Exemption 3 would be statutory surplusage if it incorporated the same requirements as Exemption 1. *See, e.g., Phillippi v. Cent. Intelligence Agency*, 655 F.2d 1325, 1329-33 (D.C. Cir. 1981) (upholding district court's reasoning that "under Exemption 3 the CIA need not show that the information withheld is either classifiable or classified"). As the Supreme Court held in *C.I.A. v. Sims*, atextual limitations on the express, broad language of Exemption 3 are unwarranted:

> Nor did Congress state that only confidential or nonpublic intelligence sources are protected. Section 102(d)(3) contains no such limiting language. Congress simply and pointedly protected all sources of intelligence that provide, or are engaged to provide, information the Agency needs to perform its statutory duties with respect to foreign intelligence.

471 U.S. 159, 169-70 (1985).

5

Of course, as is true of the agency's Exemption 1 argument, the agency's invocation of Exemption 3 to justify its Glomar response in this case does not depend on the existence of any records at all. That is because the Glomar response does not suppose that records exist—indeed, it is designed specifically to shield from disclosure the fact of whether records exist or not. In this case, the agency has determined that the disclosure of the fact of whether records exist would reveal information that would lead to the unauthorized disclosure of intelligence sources or methods. *See* Wilson Decl. ¶ 36. Nonetheless, because the agency's tethering of its Glomar response to Exemption 3 depends neither on the existence vel non of any records, nor on the classification status of any fact, plaintiff's arguments about the classification of records he speculates to exist are doubly irrelevant to the agency's proper invocation of Exemption 3.

### III. Plaintiff's Remaining Arguments Are Without Merit

Plaintiff makes a number of other arguments that do not undermine the adequacy of the CIA's response to his FOIA request.

First, plaintiff argues that the agency was not justified in providing a Glomar response, since such a response is incompatible with the general obligation of agencies to provide an index of responsive but exempt documents (the so-called "*Vaughn* index") that have been withheld from a FOIA response. *See* Pl. Br. at 4. Plaintiff is correct that there is an incompatibility, but incorrect that this provides a basis to reject the agency's use of the Glomar response. Courts have regularly held that an agency need not provide a *Vaughn* index when it has given a Glomar response to a FOIA request; to hold otherwise would prevent agencies from ever asserting a Glomar response. *See, e.g., Bassiouni v. C.I.A.*, 392 F.3d 244, 245-46 (7th Cir. 2004); *Roman v. Nat'l Sec. Agency*, No. 07-CV-4502 (JFB) (WDW), 2009 WL 303686, at *6 n.6 (E.D.N.Y. Feb. 9, 2009), *aff'd,* 354 F. App'x 591 (2d Cir. 2009); *Am. Civil Liberties Union v. C.I.A.*, 710 F.3d 422, 432 (D.C. Cir. 2013) (requiring *Vaughn* index only after the court first

6

held a Glomar response unjustified). Indeed, the very case that first approved the use of the Glomar response noted this incompatibility. *See Phillippi v. Cent. Intelligence Agency*, 546 F.2d 1009, 1013 n.7 (D.C. Cir. 1976) ("Since the 'document' the Agency is currently asserting the right to withhold is confirmation or denial of the existence of the requested records, we stress that we are not requiring, at this stage, the *Vaughn* index requested by appellant.").

Second, plaintiff makes reference to proposed legislation that he believes embodies a "new school of thought as pertaining to FOIA requests." Pl. Br. at 18-20. Because the legislation he cites has not now been (and may never be) passed into law, it has no bearing on this case. *Cf. Garcia v. Texas*, 131 S. Ct. 2866, 2867 (2011) (per curiam) (holding that due process clause of the Constitution does not prohibit a state from executing an individual while Congress considers legislation that could affect the individual's case).

Third, plaintiff variously asserts that disclosure of the existence or nonexistence of records "pose[s] no threat to National Security," Pl. Br. at 4, and that the information he seeks "deals with a matter that is 35 years old and purely of historical significance," *id*. at 6. But determining what does and does not endanger national security is the responsibility of the executive branch of government, not private individuals. *Cf. Bowers v. U.S. Dep't of Justice*, 930 F.2d 350, 357 (4th Cir. 1991) ("What fact or bit of information may compromise national security is best left to the intelligence experts.").

Fourth, citing *Hunt v. C.I.A.*, 981 F.2d 1116 (9th Cir. 1992), plaintiff argues that the agency should be required to file an in camera affidavit that might elaborate on its reasons for providing a Glomar response. *See* Pl. Br. at 5. Although such an approach may be appropriate in certain cases, it is not warranted here, since the agency has already provided a detailed public affidavit "showing that the information logically falls within the claimed exemptions." *Wilner v.*

*NSA*, 592 F.3d 60, 68, 71 (2d Cir. 2009) (internal quotation marks omitted); *see also id.* at 76 ("When, as here, a court finds that the government's public affidavits sufficiently allege the necessity of a Glomar response, ex parte and in camera review of additional, confidential material is unnecessary and beyond the role assigned to the judiciary by applicable law.") (italics removed). Moreover, the comparison to *Hunt* demonstrates that such an approach is not warranted here. As in *Hunt*, the agency's Glomar response in this case is premised on the proposition that the agency cannot reveal information about the extent of its interests in any specific foreign national without damaging national security. *Compare* 981 F.2d at 1119-20 *with* Wilson Decl. ¶¶ 25-28. That policy, equally applicable to this case, is already fully expressed in the public declaration.

**CONCLUSION**

For the reasons stated herein and in the government's opening brief and supporting documents, the government's motion for summary judgment should be granted in its entirety.

Dated: New York, New York
February 2, 2016

Respectfully submitted,

PREET BHARARA
United States Attorney for the
Southern District of New York
Attorney for Central Intelligence Agency

By:    */s/ Peter Aronoff*
      PETER ARONOFF
      Assistant United States Attorney
      86 Chambers Street, Third Floor
      New York, New York 10007
      Telephone: (212) 637-2697
      Facsimile: (212) 637-2717
      E-mail: peter.aronoff@usdoj.gov